1

2

3

4

5

6
              UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF WASHINGTON

7
                    AT TACOMA

8
BJP, L.L.C., a Washington limited         CASE NO. 10-5678 RJB
liability company, WILLIAM M.

9
PALMER, and SANDRA LEE PALMER,   ORDER ON DEFENDANTS'
a married man and married woman and     RENEWED AND REVISED

10
their marital community, and JOHN        MOTION FOR SUMMARY
PARK and WAN CHA PARK, a married   JUDGMENT AND PLAINTIFFS'

11
man and a married woman and their      CROSS MOTION FOR SUMMARY
marital community,                        JUDGMENT

12
                   Plaintiffs,

13

14
     v.

15
KITSAP COUNTY, a municipal
Corporation; JAN ANGEL and JOHN

16
DOE ANGEL, and their marital
community; JOSH BROWN and JANE

17
DOE BROWN, and their marital
community; STEVE BAUER and JANE

18
DOE BAUER, and their marital
community; JEFFREY ROWE-

19
HORNBAKER and JANE DOE ROWE-
HORNBAKER, and their marital

20
community; LARRY KEETON and JANE
DOE KEETON, and their marital

21
community; DENNIS OOST and JANE
DOE OOST, and their martial community;

22
and RICK MCNICHOLAS and JANE
DOE MCNICHOLAS, and their marital

23
community,

24
                   Defendants.

This matter comes before the Court on Defendants' Renewed and Revised Motion for Summary Judgment (Dkt. 51) and Plaintiffs' Cross Motion for Summary Judgment (Dkt. 57). The Court has considered the pleadings filed regarding these motions and the remaining record.

## I.    FACTS ANDPROCEDURAL HISTORY

### A.  BACKGROUND FACTS

This case arises from the Kitsap County, Washington Board of Commissioners' ("BOC") December 20, 2007, decision to overturn a hearing examiner's decision and deny Plaintiff BJP, L.L.C.'s ("BJP") application to build a mixed use development in Manchester, Washington. Dkt. 49.  The development was referred to as "Colchester Commons." *Id.*  Plaintiffs William Palmer and John Park, and their marital communities, are members of BJP. *Id.*  Individual Defendants Jan Angel, Josh Brown, and Steve Bauer are, or were, Kitsap County Commissioners. *Id.*  Defendants Jeffrey Rowe-Hornbaker, Larry Keeton, Dennis Oost, and Rick McNicholas are employees of the Kitsap County Department of Community Development ("DCD"). *Id.*

In January of 2006, Plaintiff BJP's site plan review application for Colchester Commons was submitted to Kitsap County by Plaintiff William Palmer.  Dkt. 23, at 3.  Around that same time, Mr. Palmer submitted BJP's plan for another development across the street referred to as Manchester Commons. *Id.*  Colchester Common's site plan review application was determined to be complete by the DCD in April of 2006.  Dkt. 26, at 2.  A public hearing before a hearing examiner was scheduled for August 24, 2006. *Id.*  At the time of the hearing BJP indicated its intention to submit a revised plan, and so by agreement of the parties, the public hearing was rescheduled to September 28, 2006. *Id.*, at 2-3.   After the hearing, the hearing examiner left the record open for additional comments. *Id.*

On February 27, 2007, the hearing examiner granted the site plan review approval for Colchester Commons, subject to conditions. Dkt. 22-3. The decision was appealed the BOC. *Id.,* at 3. After a hearing, the BOC remanded the matter to the hearing examiner on June 11, 2007, for his review and clarification of his finding that the project was "consistent, harmonious, or compatible" with the existing rural character of Manchester consistent with Kitsap County Ordinance 17.410.040(D)(2) (found in the record at 21-1, at 17). *Id.* The BOC also wanted the hearing examiner to determine whether there was a courtyard in the proposed plan, and if not, what commercial uses will be designated for the first floor. *Id.*

On August 2, 2007, the hearing examiner again approved the site plan for Colchester Commons, concluding that the design and compatibility standards were adequately satisfied. Dkt. 22-3. The hearing examiner also found that although there was uncertainty regarding the use of the first floor, that uncertainty did not require BJP go through the Conditional Use Permit process. *Id.*

An appeal to the BOC was again made, and on or about December 20, 2007, the BOC reversed the hearing examiner's decision based on the project's failure to meet design and compatibility standards under KCC 17.410.040 (the project was not "consistent, harmonious, or compatible" with the existing rural character of Manchester). Dkt. 22-1, at 14-17. The BOC also reversed the decision based on the undefined use of the courtyard area. *Id.*

Plaintiffs assert that they filed a timely appeal of the BOC's decision pursuant to Washington's Land Use Petition Act ("LUPA"). *Id.* In June of 2008, the Kitsap County, Washington Superior Court granted BJP relief under LUPA: the BOC's decision was reversed and the hearing examiner's decision to grant approval of BJP's application was reinstated. Dkt. 22-1. In doing so, the superior court found that the ordinance relied upon by the BOC in

overturning the hearing examiner "was unconstitutionally vague" and that the decision of the BOC "violated the constitutional rights of BJP." Dkt. 22-1, at 3 and 12. The superior court's decision was not appealed.

Plaintiffs did not go forward with the subject development even though the application was approved by the superior court in June of 2008. Dkt. 60, at 3. BJP eventually lost the property to foreclosure. *Id.*

## B. PROCEDURAL HISTORY

On August 30, 2010, this case was filed in Kitsap County, Washington, Superior Court and was removed on September 22, 2010. Dkt. 1. In their Amended Complaint, Plaintiffs make claims under federal law for violation of their due process and equal protection rights pursuant to 42 U.S.C. § 1983. Dkt. 49. Plaintiffs make claims under Washington law for tortious interference of a business expectancy and negligence. *Id.* Plaintiffs seek declaratory relief: that Plaintiffs' "rights to due process and equal protection" have been violated, that Defendants wrongfully interfered with Plaintiffs' business interests, and that Defendants "negligently delayed in processing permit application and negligently denied Plaintiffs' site plan approval." *Id.* They also seek damages, attorneys' fees, and costs. *Id.*

Plaintiffs filed a Motion for Summary Judgment on April 8, 2011, arguing that: 1) this Court should accord full faith and credit to the Kitsap County, Washington, Superior Court's June 2008 judgment, 2) find that the site plan review regulation as applied by the BOC was unconstitutionally vague, and accordingly, 3) that "Kitsap County is liable under § 1983 for violating BJP's right to due process." Dkt. 21.

On April 14, 2011, Defendants moved for summary dismissal of all claims. Dkt. 25. Defendants argue that: 1) Plaintiffs Park and Palmer have no standing as shareholders, 2) the

1    individual defendants are qualifiedly immune from suit and have quasi-judicial immunity, 3)

2    many of the claims are barred by the statute of limitations, 4) the due process claim should be

3    dismissed, and 5) the equal protection claim should be dismissed as groundless. *Id.*

4           Plaintiffs then moved for relief pursuant to Fed. R. Civ. P. 56 (d) so that they could "take

5    depositions of County Commissioners and the County's [Fed. R. Civ. P. 30 (b)(6)] witness."

6    Dkt. 30. On May 12, 2011, Plaintiffs' motion under Rule 56(d) was granted and the cross

7    motions for summary judgment were stricken. Dkt. 47.

8           On June 16, 2011, Defendants renewed and revised their motion for summary dismissal

9    of all claims. Dkt. 51. Defendants argue: 1) Park and Palmer have no standing to assert claims

10   for BJP and they failed to file claims for damages under RCW 4.96.020(4), 2) the individual

11   Defendants are immune from suit on the federal constitutional claims, 3) many of the claims in

12   this action are barred by the statute of limitations, 4) Plaintiff can't show that there are issues of

13   fact as to the tortuous interference claim, and the 5) negligence claims are barred by immunity

14   and the public duty doctrine. *Id.*

15          Plaintiffs respond, and renew their cross motion for summary judgment. Dkt. 57. In

16   opposing the Defendants' motion for summary judgment, Plaintiffs argue that 1) the individual

17   Plaintiffs have standing to assert their own claims, 2) the Parks can claim damages against the

18   County under RCW 4.96.020, 3) Plaintiffs brought their claims within the statute of limitations,

19   4) they have a viable tortuous interference claim, 5) Plaintiffs have a property interest giving rise

20   to procedural due process protections, and 6) Plaintiffs have asserted a procedural due process

21   claim based on the County's application of a constitutionally vague ordinance. *Id.* Plaintiffs

22   argue in their cross motion for summary judgment that 1) the Court should enter judgment that

23   the County is liable under § 1983 for a due process violation, 2) Defendants violated Plaintiffs'

24

1  right to equal protection, 3) the public duty doctrine does not bar Plaintiff's negligence claim,

2  and that 4) Defendants are not immune from suit. *Id.*

3          This opinion will address the issues in the following order:  1) the statute of limitations

4  and Washington's notice of claim statute, 2) the individual Plaintiffs' standing to bring suit, 3)

5  the federal constitutional claims and assertions of qualified immunity, and 4) state law claims

6  and the various defenses raised.

7                              **II.          DISCUSSION**

8       **A.  SUMMARY JUDGMENT STANDARD**

9          Summary judgment is proper only if the pleadings, the discovery and disclosure materials

10  on file, and any affidavits show that there is no genuine issue as to any material fact and that the

11  movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The moving party is

12  entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

13  showing on an essential element of a claim in the case on which the nonmoving party has the

14  burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue

15  of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

16  for the non moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

17  (1986)(nonmoving party must present specific, significant probative evidence, not simply "some

18  metaphysical doubt.").  *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a

19  material fact exists if there is sufficient evidence supporting the claimed factual dispute,

20  requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty*

21  *Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors*

22  *Association*, 809 F.2d 626, 630 (9th Cir. 1987).

23

24

1    The determination of the existence of a material fact is often a close question.  The court

2    must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

3    e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254, T.W. *Elect.*

4    *Service Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor

5    of the nonmoving party only when the facts specifically attested by that party contradict facts

6    specifically attested by the moving party.  The nonmoving party may not merely state that it will

7    discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

8    to support the claim.  *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).

9    Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not

10   be "presumed."  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

11   **B.  STATUTE OF LIMITATIONS**

12   Claims brought pursuant to 42 U.S.C. § 1983 are governed by the statute of limitations of the

13   local jurisdiction for personal injury actions.  *RK Ventures, Inc., v. City of Seattle*, 307 F.3d 1045

14   (9th Cir. 2002).  In Washington, personal injury actions must be brought within three years.

15   RCW § 4.16.080(2).  Accordingly, the statute of limitations applicable to Plaintiffs' § 1983

16   claims is three years.  *RK Ventures,* at 1058.  Further, tort actions, like Plaintiffs' claims for

17   negligence and tortuous interference with a business expectancy, must be brought within three

18   years under RCW § 4.16.080(2).

19   Plaintiffs filed suit on August 30, 2010.  Dkt. 1.  State claims and claims asserted pursuant to

20   § 1983 against the County and the individual Defendants based on events occurring prior to

21   August 30, 2007, should be dismissed with prejudice as barred by the statute of limitations.

22   Further, all federal claims and state law claims asserted against the Defendants Jeffrey Rowe-

23   Hornbaker, Larry Keeton, Dennis Oost, and Rick McNicholas, and their marital communities,

24

should be dismissed because Plaintiffs point to no actions taken by these Defendants which occurred after August 30, 2007, which would give rise to liability. Any claims Plaintiffs make against Kitsap County based on the actions of these employees of the DCD should likewise be dismissed as barred by the statute of limitations.

Plaintiffs argue that the statute of limitations did not start until their LUPA claim accrued. Dkt. 57. Plaintiffs fail to cite authority that supports this interpretation of Washington's statute of limitation and § 1983. In the Ninth Circuit, a statute of limitations under § 1983 "begins to run when the cause of action accrues, which is when the plaintiffs know or have reason to know of the injury that is the basis of their action." *RK Ventures,* at 1058. Plaintiffs state that they began to complain about the DCD employees behavior as early as 2007, Dkt. 59, at 3-5, evincing an awareness of the potential for injury any delay in approving the permit may have caused them. Plaintiffs claim against the DCD employees should be dismissed.

To the extent that Plaintiffs make claims against members of the BOCC and Kitsap County for actions taken after August 30, 2007, those claims are not barred by the statute of limitations.

## C. INDIVIDUAL PLAINTIFFS' STANDING TO ASSERT CLAIMS AS SHAREHOLDERS

"In general, shareholders lack standing to assert an individual § 1983 claim based on harm to the corporation in which they own shares. Injury to the corporation is not cognizable as injury to the shareholders, for purposes of the standing requirements." *RK Ventures,* at 1057 (*internal citations omitted*). The individual Plaintiffs here, William Palmer, Sandra Lee Palmer, John Park and Wan Cha Park, are shareholders in BJP. Dkt. 60, at 3. "A shareholder does have standing, however, when he or she has been injured directly and independently from the corporation." *RK Ventures,* at 1057 (*internal citations omitted*).

The individual Plaintiffs argue that they have standing to bring suit as shareholders because they have suffered injuries as a result of the Defendants violating BJP's constitutional rights. Dkt. 57. The individual Plaintiffs fail to make any showing (or even allegation) that their individual constitutional rights, as opposed to BJP's constitutional rights, were violated. "Well-established principles of corporate law prevent a shareholder from bringing an individual direct cause of action for an injury done to the corporation or its property by a third party." *U.S. v. Stonehill*, 83 F.3d 1156, 1160 (9th Cir. 1996) (*internal citations omitted*). Accordingly, the § 1983 causes of action against the Defendants "belong solely to" BJP. *Id.,* at 1161. The individual Plaintiffs' injuries are "merely incidental to the injury" caused to BJP. *Id.* Plaintiffs' citation to cases like *Gomez v. Alexian Bros. Hosp.*, 698 F.2d 1019, 1021 (9th Cir.1983) (*per curiam*) is not helpful to their position. The plaintiff in *Gomez* asserted that he and his company had been denied a contract because of <u>his</u> national origin. *Id.* Determining that he had standing to assert a § 1983 claim for himself and his company, the Ninth Circuit found that he had distinct injuries that were personal to himself apart and distinct from any injuries suffered by the corporation. *Id.* Here no such showing was made. Further, Plaintiffs offer no basis upon which to conclude they have standing as shareholders to assert any of the state law claims.

The individuals Plaintiffs' have failed to show that they have standing to assert claims as shareholders. To the extent that the individual Plaintiffs attempt to do so, their claims should be dismissed because they do not have standing to assert such claims.

**D. INDIVIDUAL PLAINTIFFS & WAHSINGTON'S NOTICE OF CLAIM STAUTE**

Pursuant Washington's Notice of Claim statute, RCW 4.96.020(3), "all claims for damages must be presented on the standard tort claim form that is maintained by the risk management division of the office of financial management." The claim is to include the claimant's name and

birth date. *Id.* RCW 4.96.020(4) prohibits the commencement of a suit against a county or its employees until 60 days after such a claim is filed.

In addition to having their claims dismissed because they do not have standing as shareholders, to the extent that the Defendants move for dismissal of Mr. and Ms. Palmer's state law claims based on their failure to satisfy the Notice of Claim statute, the motion should be granted. This analysis does not apply to the Parks. On June 14, 2010, a Claim for Damages was filed with Kitsap County. Dkt. 63-1, at 2. The claimant[s] are listed as "BJP, LLC, John Park, Managing Member" and Mr. Park's birth date is listed. *Id.* The notice of claim statute specifically provides that "[w]ith respect to the content of claims under this section and all procedural requirements in this section, this section must be liberally construed so that substantial compliance will be deemed satisfactory." RCW 4.96.020(5).

The individual Plaintiffs Palmer and Parks' claims should be dismissed because they do not have standing as shareholders and the Palmers' claims should also be dismissed because they did not satisfy the requirements of Washington's Notice of Claim statute. Further analysis will be as to BJP's claims.

### E. BJP'S FEDERAL CONSTITUTIONAL CLAIMS AGAINST THE INDIVIDUAL COMMISSIONERS VIA 42 U.S.C. § 1983 & QUALIFIED IMMUNITY

In order to state a claim under 42 U.S.C. § 1983, a complaint must allege that: (1) the conduct complained of was committed by a person acting under color of state law, and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986).

Pursuant to 42 U.S.C. § 1983, Plaintiff asserts that the individual members of the BOC violated BJP's Fifth and Fourteenth Amendment rights under the U.S. Constitution. Dkt. 1. The

parties do not dispute that the BOC was acting under the color of state law. In so far as Plaintiff complains of the passage of an "emergency ordinance," the BOC has legislative immunity, even if the BOC devised the ordinance specifically targeting them. *Bogan v. Scott-Harris*, 523 U.S. 44, 54-55 (1998). Claims based on that action should be dismissed. The BOC here does not have legislative immunity for the denial of the permit because that at that point it was not acting in a legislative capacity. *See Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391 (1979). The individual Defendants argue that they are entitled to qualified immunity as to Plaintiff's claims that they violated BJP's federal constitutional rights when they denied the permit. Dkt. 51.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Through application of the qualified immunity doctrine, public servants avoid the general costs of subjecting officials to the costs of trial - distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." *V-1 Oil Co. v. Smith*, 114 F.3d 854, 857 (9th Cir. 1997)(*internal citations omitted*). The immunity is "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Whether a reasonable officer could have believed his or her conduct was proper is a question of law for the court and should be determined at the earliest possible point in the litigation. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 872-73 (9th Cir. 1993).

The Supreme Court established a two-part analysis in *Saucier v. Katz*, 533 U.S. 194, 201 (2001), for determining whether qualified immunity is appropriate in a suit against a public

official for an alleged violation of a constitutional right.  *Boyd v. Benton County*, 374 F.3d 773, 778 (9th Cir. 2004)(*citing Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  Although no longer mandatory, the Supreme Court has recently held that it may be "beneficial" for a court required to rule upon qualified immunity to examine the *Saucier* factors:  (1) whether the official violated the plaintiff's constitutional rights on the facts alleged and (2) if there was a violation, whether the constitutional rights were clearly established.  *Pearson v. Callahan*, 129 S.Ct. 808, (2009) (holding that the *Saucier* two-part analysis was no longer mandatory).  Application of the factors is beneficial here.

Both parties have moved for summary judgment on Plaintiff BJP's claim that the Defendants are liable for violating BJP's Fourteenth Amendment rights to due process.  Plaintiff repeatedly emphasizes that the due process claim is for a violation of procedural due process alone.  Dkts. 57 and 64.  This opinion will turn to whether BJP's Fourteenth Amendment rights to procedural due process were violated, then, if they were violated, whether they were clearly established, and then will examine BJP's Fifth Amendment claim in the same manner.

1.    Procedural Due Process Claim - Violation?

Under the Fourteenth Amendment, no state shall "deprive any person of life, liberty, or property, without due process of law.  "The Fourteenth Amendment is violated by laws so vague that persons of common intelligence must necessarily guess at their meaning and differ as to their application." *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 556 (9th Cir. 2004).  If a law "fails to provide a reasonable opportunity to know what conduct is prohibited or is so indefinite as to allow arbitrary and discriminatory enforcement," it is unconstitutional.  *Id.* "Although economic regulation is subject to a less strict vagueness test than criminal laws, vagueness

analysis still applies to such regulation." *Chalmers v. City of Los Angeles*, 762 F.2d 753, 757 (9th Cir. 1985).

The ordinance at issue, KCC 17.410.040, requires that the "proposed development would be harmonious and compatible with existing and future developments." The ordinance does not contain definitions of any of the operative terms.

BJP moves for summary judgment on its claim that its procedural due rights were violated, arguing that this Court should accord full faith and credit to the Kitsap County Superior Court's decision in *BJP, LLC v. Kitsap County, et al.,* Kitsap County, Washington, Superior Court cause number 08-2-00060-7, in the record at Dkt. 22-1, at 2-12. Dkts. 57 and 64.

Under 28 U.S.C. § 1738, state court "judicial proceedings ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." "The Supreme Court has interpreted the Act to require federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Los Altos El Granada Investors v. City of Capitola*, 583 F.3d 674 686 (9th Cir. 2009). In Washington, the party asserting collateral estoppel bears the burden of proving:

> (1) the issue decided in the prior adjudication is identical with the one presented in the second action; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom [collateral estoppel] is asserted was a party or in privity with the party to the prior adjudication; and (4) application of the doctrine does not work an injustice.

*State v. Vasquez,* 148 Wash.2d 303, 308 (2002).

In overturning the BOC decision to deny BJP's permit, the superior court held that the ordinance the BOC relied upon, KKC 17.410.040, contained "a lone and undefined design standard requiring development to be 'harmonious and compatible' with existing and future

improvements" and so was unconstitutionally vague.  Dkt. 22-1, at 3.  The superior court found that BJP's constitutional rights were violated.  Dkt. 22-1, at 12.  Defendants did not appeal the superior court decision.

BJP argues that each of the elements under Washington collateral estoppel law are met. *Id.*  Defendants have argued for a differing standard to apply to the due process analysis, but have not directly addressed BJP's argument regarding giving full faith and credit to the superior court decision.  Dkts. 51, 61, and 62.  The individual Defendants argue that the proper relief for the constitutional violation found by the Kitsap County Superior Court was invalidation of the ordinance.  Dkt. 62.  Defendants argue that BJP's permit was granted in June of 2008 in the superior court order, and the ordinance has since been repealed.  *Id.*  They argue that the individual Defendants should not be held liable on a § 1983 claim for damages for violation of BJP's due process rights because recovery for damages ordinarily requires proof that the local government's action was "invidious and irrational."  *Id.*  (*citing Sintra, Inc. v. City of Seattle*, 131 Wn.2d 640, 654 (1997); and *Dodd v. Hood River*, 59 F.3d 852, 864-65 (9th Cir. 1995)).

Full faith and credit should be given to the Kitsap County Superior Court's decision, that KCC 17.410.040 was unconstitutionally vague and that the BOC violated BJP's constitutional rights.  Washington's collateral estoppel elements are met.  The issue in the LUPA appeal was the same as the issue in this portion of the *Saucier* test:  whether BJP's due process rights were violated when the BOC used KCC 17.410.040 to deny BJP's application.  The fact that the relief sought in the Superior Court is different, (reinstatement of the decision to grant the application and, now, damages) is a distinction without a difference.  The superior court determined that the statute was unconstitutionally vague and violated BJP's rights.  The prior adjudication ended in a final judgment on the merits and the parties are the same.  Though a closer question, the last

factor, "application of the doctrine does not work injustice" is also met. The parties make much of whether the claim that the law was unconstitutionally vague as applied to BJP was a procedural due process claim or a substantive due process claim. Defendants assert that a higher standard of review should apply where a plaintiff seeks damages. Dkt. 62. The confusion appears to stem from various courts referring to the void for vagueness doctrine sometimes as a violation of procedural due process rights and sometimes as a violation of substantive due process rights. However, there is sufficient authority allowing for damages in cases of a party who claimed their procedural due process rights were violated by an unconstitutionally vague law. *Chalmers v. City of Los Angeles*, 762 F.2d 753 (9th Cir. 1985). Full faith and credit should be given to the superior court's decision that KCC 17.410.040 was unconstitutionally vague and that the BOC violated BJP's constitutional rights when it used the vague statute to deny BJP's application.

2. <u>Procedural Due Process Claim –Clearly Established?</u>

In analyzing the second part of the *Saucier* test, the issue is "whether the plaintiff's constitutional right was clearly established at the time of the injury." *Boyd* at 780. "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 780-781. "In other words, an official who makes a reasonable mistake as to what the law requires under a given set of circumstances is entitled to the immunity defense." *Id.* "If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Harlow,* at 818.

Defendants' motion for qualified immunity should be granted. No showing has been made that a reasonable member of the BOC here would understand that application of the ordinance to deny BJP's building application would violate BJP's clearly established constitutional right to procedural due process. Parties have failed to point to any federal precedent on the issue. Absent binding precedent, courts considering qualified immunity turn to "all available decisional law including decisions of state courts, other circuits, and district courts to determine whether the right was clearly established." *Walnut Properties, Inc. v. City of Whittier*, 861 F.2d 1102, (9th Cir. 1988). "An additional factor is the likelihood that the Supreme Court or the Ninth Circuit would have reached the same result as courts that had already considered the issue." *Walnut Properties, Inc. v. City of Whittier*, 861 F.2d 1102, (9th Cir. 1988).

BJP points to a single decision from the Washington State Court of Appeals, Division I (*Anderson v. Issaquah*, 70 Wash.App. 64 (1993)), in arguing that the BOC's application of a vague statute to deny the site plan application was a violation of BJP's clearly established rights. Decisions from the Washington State Court of Appeals, Division I is not binding on courts within Division II. *See Erickson v. Mobay Corp.*, 110 Wash. App. 332 (Div. III 2002). Although not binding in Division II, the hearing examiner discussed *Anderson* in his opinion after the remand as did the Kitsap County Superior Court. In *Anderson,* the court held that Issaquah's building design ordinance was unconstitutionally void for vagueness. *Id*. The Issaquah ordinance was discussed as follows:

> Looking first at the face of the building design sections of IMC 16.16.060, we note that an ordinary citizen reading these sections would learn only that a given building project should bear a good relationship with the Issaquah Valley and surrounding mountains; its windows, doors, eaves and parapets should be of "appropriate proportions", its colors should be "harmonious" and seldom "bright" or "brilliant"; its mechanical equipment should be screened from public view; its

exterior lighting should be "harmonious" with the building design and "monotony should be avoided." The project should also be "interesting". IMC 16.16.060(D)(1)-(6). If the building is not "compatible" with adjacent buildings, it should be "made compatible" by the use of screens and site breaks "or other suitable methods and materials." "Harmony in texture, lines, and masses [is] encouraged." The landscaping should provide an "attractive ... transition" to adjoining properties. IMC 16.16.060(B)(1)-(3).

*Id.,* at 75-76. The *Anderson* Court found that in attempting to interpret and apply the Issaquah code, the commissioners were charged with a task that left "only their own individual, subjective 'feelings' about the 'image of Issaquah' and as to whether this project was 'compatible' or 'interesting.'" *Id,* at 76-77. The *Anderson* court concluded that the Issaquah ordinance did not provide a sufficiently objective measure of whether a proposal met its requirements. *Id.* The lack of such guidance left applicants and the commissioners to guess at what was required and so was unconstitutionally vague. *Id.* Plaintiff argues that the ordinance here provided even less guidance as to what is considered "harmonious and compatible" than the ordinance in *Anderson*.

The Court can not conclude that a single case outside the relevant state court of appeals division establishes that BJP's constitutional rights were clearly established at the time or that the *Anderson* case precludes Defendants' assertion of qualified immunity. This is particularly true in the absence of any federal precedent. The individual Defendants' motion for summary dismissal of Plaintiff BJP's due process claims should be granted.

          3.     Equal Protection Claim – Violation?

The Equal Protection Clause prohibits states from denying "any person within in its jurisdiction the equal protection of the laws." Plaintiff BJP does not allege that it was treated differently due to its membership in a protected class, rather, it alleges it suffered "unique treatment." Dkt. 57. "When an equal protection claim is premised on unique treatment rather than on a classification, the Supreme Court has described it as a class of one claim." *North*

1   *Pacifica LLC v. City of Pacifica*, 526 F.3d 478, (9th Cir. 2008) (*citing Vill. of Willowbrook v.*

2   *Olech*, 528 U.S. 562, 564 (2000) (*per curiam*)).  In a class of one case, like the one here, in order

3   to claim a violation of equal protection, the plaintiff must establish that the BOC "intentionally,

4   and without rational basis, treated the plaintiff differently from others similarly situated."  *Id*.

5   Further, "[a] class of one plaintiff must show that the discriminatory treatment was intentionally

6   directed just at him, as opposed to being an accident or a random act."  *Id*. (*internal citations*

7   *omitted*).

8           Plaintiff's equal protection claim should be dismissed.  Plaintiff has failed to show that

9   there are issues of fact as to whether the individual members of the BOC intended to treat it

10  differently than other similarly situated property owners.

11                          *a.  Intentional Treatment?*

12          To meet their burden here, Plaintiff must show that the BOC intended to treat it

13  differently than other applicants, although no showing of ill will is required.  *Gerhart v. Lake*

14  *County, Mont.*, 637 F.3d 1013, 1023 (9th Cir. 2011).  The central problem with Plaintiff's equal

15  protection claim is that it submitted two applications for development within a month of one

16  another - for Colchester Commons and Manchester Commons.  Dkt. 23, at 3.  It is undisputed

17  that the plan for Manchester Commons was approved.  *Id*.  Plaintiff makes no showing that the

18  BOC intended to treat it differently.

19                          *b.  Differently than Other Similarly Situated Property Owners?*

20          Further, Plaintiff has failed to show that there are issues of material fact that it was

21  treated differently than other similarly situated property owners.  Plaintiff does not provide any

22  evidence of treatment of other property owners.  Instead, it discusses the differing treatment of

23  its own two projects.  Plaintiff argues that the projects were the same in that they both complied

24

with the applicable codes.  Dkt. 59, at 6-7.  Defendants point out that the projects were

substantially different.  For example, Manchester Commons had a total building area of 24,793

square feet, Colchester Commons (the subject property) had a total building area of 56,671

square feet.  Dkt. 26, at 3.  Further, Manchester Commons was one building and Colchester

Commons was two buildings.  *Id.*  Manchester Commons was a two story building with hipped

gable roof and Colchester Commons was a three story building with a low profile roof.  *Id.*, at 4.

Manchester Commons had enough surface area for parking and Colchester Commons would

have to use underground parking to meet requirements.  *Id.*  An examination of Plaintiff's own

two projects shows that they are not sufficiently similar to create an issue of material fact.

> *c.  Without Rational Basis?*

"[T]he rational basis prong of a 'class of one' claim turns on whether there is a rational

basis for the distinction, rather than the underlying government action." *Gerhart,* at 1023.  Here

Plaintiff's only evidence is that each of <u>their</u> two projects were treated differently.  The

undisputed evidence is that the projects were different – accordingly, the BOC had a "rational

basis for the distinction."  Plaintiff's claim for equal protection should be dismissed.

> 4.  <u>Equal Protection Claim – Clearly Established?</u>

Plaintiff has failed to show that they suffered a violation of its equal protection rights.

Further analysis on whether their rights were clearly established is not necessary.  *See Villegas v.

Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 955 (9th Cir. 2008); and *Saucier v. Katz*, 533 U.S.

194, 201 (2001).

## F.  BJP'S FEDERAL CLAIMS AGAINST KITSAP COUNTY PURSUANT TO *MONELL*

A municipality cannot be held liable for violations of constitutional rights under a *respondeat

superior* theory.  *Fogel v. Collins*, 531 F.3d 824, 834 (9th Cir. 2008)(*citing Monell v. Dept. of*

*Soc. Serv.*, 436 U.S. 658, 691 (1978)).  A local government may be "liable for violation of constitutional rights resulting from 'a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers' or 'pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels.'"  *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 957 (9th Cir. 2008) (*quoting Monell*, at 690-691).  "For purposes of liability under *Monell,* a 'policy' is 'a deliberate choice to follow a course of action ... made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" *Fogel* at 834 (*quoting Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir.2002) (per curiam)).

All Plaintiffs' federal constitutional claims asserted against Kitsap County, except BJP's claim for procedural due process, should be dismissed for the reasons stated above.  *Villegas,* at 957 (holding that where a plaintiff has failed to show a constitutional violation, "there can be no municipal liability" under *Monell)*.  Giving full faith and credit to the Kitsap County Superior Court's holding that KKC 17.410.040 is unconstitutionally vague and that the BOC violated BJP's constitutional rights to due process when it utilized that ordinance to deny the building application, BJP has shown that it's constitutional rights have been violated by an ordinance "officially adopted and promulgated" by Kitsap County.  BJP has shown that there is a direct causal link between KKC 17.410.040 and the alleged constitutional deprivation of BJP's rights. *Villegas,* at 957.  Defendants argue that the County should not be held liable for the constitutional deprivation because it was not known that KKC 17.410.040 was unconstitutional until after the Kitsap County Superior Court's ruling.  However, knowledge that the official policy was constitutionally infirm may not be necessary to establish liability under *Monell*,

"because 'even where some constitutional development could not have been foreseen by municipal officials, it is fairer to allocate any resulting financial loss' to the government and its taxpayers." *Chalmers v. City of Los Angeles*, 762 F.2d 753, 758 (9th Cir. 1985)(*quoting Owen v. City of Independence*, 445 U.S. 622, 655(1980)). Accordingly, BJP's due process claim, asserted against Kitsap County pursuant to *Monell*, should not be dismissed.

G. **BJP'S STATE LAW CLAIMS**

1. Negligence

BJP's claim for negligence should be dismissed. The claim for negligence is premised on the alleged failure of the County to timely process their application in accord with Kitsap County ordinances 21.04.110 or 24.04.080. As stated above in Section II B, all state claims asserted against the County and the individual Defendants based on events occurring prior to August 30, 2007, should be dismissed with prejudice as barred by the statute of limitations. The only event which occurred within the allowable time period was the BOC's decision to reverse the hearing examiner on December 20, 2007 (Dkt. 22-1, at 14-17). Even assuming the Defendants had a duty to timely process BJP's application based on the statutes, Plaintiff makes no showing that KCC 21.04.110 or 24.04.080 were violated during the relevant time period. Plaintiff's negligence claim should be dismissed.

2. Tortious Interference with a Business Expectancy

In Washington, a plaintiff claiming tortious interference with a business expectancy must show:

> (1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage.

1  *Pacific Northwest Shooting Park Ass'n v. City of Sequim*, 158 Wash.2d 342, 351 (2006)(*internal*

2  *citations omitted*).

3      The only action occurring within the time period allowed by the statue of limitations is

4  the BOC decision to overturn the hearing examiner's decision. Defendants argue that element

5  two - that Defendants had knowledge of the business relationship and element four - that

6  Defendants interference was for an improper purpose or used improper means were not met.

7              *a.  Knowledge of Existence of Business Relationship*

8      "Although knowledge of the existence of the business relationship in issue is an essential

9  element in establishing liability for interference therewith, it is sufficient if the evidence reveals

10  that the alleged interferor had knowledge of facts giving rise to the existence of the relationship."

11  *Calbom v. Knudtzon*, 65 Wash.2d 157, 165 (1964).

12      BJP has pointed to sufficient evidence to show that there are issues of fact as to the

13  second element. That is, there are sufficient issues of fact to conclude that Defendants had

14  knowledge of a potential business relationship. Although Defendants offer testimony that the

15  BOC did not know of a specific business relationship, BJP's application was for a mixed-use

16  residential and commercial building. The nature of this development gives rise to the inference

17  that the BOC knew that BJP had a business expectancy.

18              *b.  Improper Purpose or Used Improper Means*

19      Although thin, BJP has alleged sufficient facts that the BOC had an improper purpose

20  when it denied BJP's building permit: bowing to political pressure. Plaintiff argues that this

21  case is like *Pleas v. City of Seattle*, 112 Wash.2d 794, 804-805 (1989). The *Pleas* court found

22  that sufficient evidence existed to allow a developer's claim for tortious interference against a

23  city to survive summary judgment, particularly where it took more than ten years for a decision

24

on the permit to be made.  It held that "[t]he improper motives arise from the City officials' apparent desire to gain the favor of a politically active and potentially influential group opposing the Parkridge project. The improper means arise from the City's actions in refusing to grant necessary permits and arbitrarily delaying this project." *Pleas*, at 804-805.

Plaintiff argues that when the BOC denied its permit, the BOC acted with an improper motive:  attempting to "assuage the concerns" of "many Manchester citizens."  Dkt. 57. Plaintiff points to evidence that Commissioners Brown and Bauer were aware that the project was controversial.  Commissioner Brown testified that he was aware there was concern on the part of some in Kitsap County regarding the height and size of buildings in downtown Manchester at the time.  Dkt. 58-12, at 3.  Commissioner Bauer testified that he recalled that the Colchester Commons structure was "big" and that the generally the community did not like it. Dkt. 58-12, at 5.  When asked "and did that cause the commissioners concerns, that their constituents didn't 1ike this, development?"  Commissioner Bauer stated "[w]e've had very clear instructions from our attorneys that we deal with the record of the appeal, and that's what we did." *Id.*  Defendants point out that there is also evidence in the record that the Commissioners were doing their best to interpret the ordinance and apply it.  Dkt. 62.

Plaintiff's other allegations are not adequate to preclude summary judgment on this issue. Plaintiff argues that the BOC used improper means when it delayed deciding whether to grant the permit.  As above, the statute of limitations forecloses actions prior to August 30, 2007. Further, Plaintiff makes no showing that the BOC arbitrarily delayed review of this project. Plaintiff again complains of the passage of an emergency ordinance which prohibited three-story buildings.  Dkt. 57.  As stated above, the BOC has legislative immunity as to the passage of this

1   ordinance.  However, Plaintiff met its burden on this element by pointing to some evidence of

2   improper motive – political pressure.

3       There are sufficient issues of fact that preclude summary judgment on BJP's claim

4   against the county for intentional interference with a business expectancy.  Defendants' motion

5   to dismiss this claim should be denied.

6       **E.    CONCLUSION**

7       Defendants' motion for summary judgment should be granted as to all Plaintiffs' claims

8   except BJP's claim against Kitsap County, asserted pursuant to *Monell*, that its constitutional

9   right to due process was violated and BJP's state claim for intentional interference with a

10  business expectancy.  Plaintiffs' motion for summary judgment should granted only as to BJP's

11  due process claim against Kitsap County, and be denied in all other respects.  The caption on

12  further pleadings filed in this matter should reflect that the remaining plaintiff is BJP and

13  remaining defendant is Kitsap County.  All other parties should be removed from further

14  pleadings.

15      **ORDER**

16      It is **ORDERED** that:

17      • Defendants' Motion for Summary Judgment (Dkt. 53) is

18          o **GRANTED AS FOLLOWS**:

19              ▪ Plaintiffs' claims asserted against the Defendants Jeffrey Rowe-

20                  Hornbaker, Larry Keeton, Dennis Oost, and Rick McNicholas, and

21                  their marital communities, **ARE DISMISSED** as barred by the

22                  statute of limitations;

23

24

- Plaintiffs' claims against Kitsap County based on the actions of Defendants Jeffrey Rowe-Hornbaker, Larry Keeton, Dennis Oost, and Rick McNicholas, and their marital communities, **ARE DISMISSED** as barred by the statute of limitations;

- The individual Plaintiffs' § 1983 claims and state law claims against Kitsap County and the individual Defendants **ARE DISMISSED** because they failed to show they had standing to bring such claims;

- Plaintiffs William Palmer and Sandra Palmer's state law claims against the Defendants **ARE DISMISSED** because they failed to satisfy Washington's Notice of Claim statute;

- Plaintiffs' § 1983 claims against the individual Defendants for violation of their due process rights **ARE DISMISSED;**

- Plaintiffs' § 1983 claims against the individual Defendants for violation of their equal protection rights **ARE DISMISSED;**

- Plaintiffs' state law claim for negligence **IS DISMISSED;**

- **AND DENIED AS FOLLOWS**:

  - BJP's due process claim against Kitsap County; and

  - BJP's claim for intentional interference with a business expectancy against Kitsap County.

- Plaintiffs' Motion for Summary Judgment (Dkt. 57) is **GRANTED** as to BJP's claim for due process violation against Kitsap County and **DENIED** in all other respects.

- The case may proceed on these claims only: BJP's due process claim and against Kitsap County and BJP's claim for intentional interference with a business expectancy against Kitsap County.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 1st day of August, 2011.

ROBERT J. BRYAN
United States District Judge